———⌇O⌇———

BENNINGTON COUNTY, FEBRUARY TERM 1826.

*John Moar vs. Solomon Wright.*

The assignment of a chose in action for a valuable consideration, is a sufficient
consideration for a promise of the debtor to make payment to the assignee.

H

*A special promise of an executor to pay a debt of the testator to such assingee, in consideration of the assignment, and of assets in the hands of the executor, is valid, and he is liable thereon in his own right.*

Error to reverse a judgment of the county court rendered December Term, 1824. The action below was *assumpsit* and came into the county court by appeal from a justice. The declaration alleged, that *Wright,* the defendant, was executor of the will of one *Thomas Brownell,* and represented the estate to be insolvent, upon which commissioners were appointed to receive and adjust the claims of creditors. That on the 29th day of October 1821, the commissioners duly allowed in favor of one *Isaac C. Brownell* against the estate aforesaid the sum of $59,07 on book account ; and having reported said allowance to the court of probate, the same was duly accepted and approved. It also alleged, that on the 1st day of February, 1822, the said *Isaac C. Brownell* for a valuable consideration, sold and assigned the said demand of $59,07 to the plaintiff and ordered the same to be paid to him ; of which the defendant then had notice. It then proceeded as follows. "And the plaintiff further avers, that the said *Solomon* hath received into his hands and possession more of the estate of the said *Thomas Brownell* deceased than was sufficient to pay his debts and legacies. And the plaintiff says, that the said sum of $59,07 being unpaid, he the defendant in consideration of the premises, afterwards to wit, on the 10th day of Feb. 1822, at *Pownal* aforesaid, undertook and faithfully promised the said *John* to pay him the said sum of $59,07 in a reasonable time, when he should sell and dispose of property belonging to the said estate of said *Thomas.* And the plaintiff says that a reasonable time, for selling and disposing of said property has elapsed, and that the time allowed for the settlement of said estate hath long since expired ; and that on the 10th day of February, 1822, and often before and since, he hath requested the said *Solomon* to pay him said sum of $59,07, which he hath neglected and refusto do," &c.

The defendant pleaded that there was no such record in the probate office of the supposed allowance of said sum of $59,07 in favor of the said *Isaac C. Brownell,* nor was such allowance ever reported or returned to said probate office. The plaintiff re-

plied that the commissioners allowed to the $\Big\{$ <span style="float:right">Bennington, Feb. 1826.</span>
said *Isaac C. Brownell* three several sums $\Big\rangle$ <span style="float:right">*Moar* vs. *Wright.*</span>
on distinct claims, one of which was the said sum of $59,07, on
book account; which sums being $59,07, $53,57 and $30,25,
when added make the sum of $142,89, which was reported as
due to the said *Isaac,* and as consisting of the several sums afore-
said. And that the allowance and report was duly recorded.—
To this replication the defendant demurred specially, assigning for
cause,—that it did not show the existence of such a record as was
averred in the declaration,—and that it was a departure from the
declaration. The County Court decided the replication to be in-
sufficient and gave judgment for the defendant; whereupon this
writ of error was brought, assigning for error the insufficiency of
the defendant's plea below, and the common error.

*Church* and *D. Robinson,* for the plaintiff in error.—It is an es-
tablished rule that in deciding on a demurrer, the court will ren-
der judgment against the party whose pleading is first defective
in substance.—1 *Chit. Pl.* 647. But this rule does not hold
where the objection to the preceeding pleadings is a defect in
form; for formal defects are aided by the statute of amendments.
Therefore if the plaintiff's declaration is not defective in sub-
stance and the defendant's plea be substantially defective, judg-
ment ought to have been for the plaintiff.

It is contended that the plaintiff's declaration is not defective;
but that the defendant's plea is wholly and substantially so. It ap-
pears that *John Moar,* the plaintiff in error held the claim speci-
fied in the record, by assignment for a valuable consideration from
*Isaac C. Brownell,* to whom the same was allowed by the com-
missioners; and that the defendant, being executor, was notified
by the plaintiff of such assignment, and having in his hands assets
sufficient to pay the debts and legacies due from the estate, prom-
sed the plaintiff to pay said claim to him. It is believed that this
promise set forth in this declaration contains every substantial re-
quisite to bind the defendant, and that he is liable *de bonis propriis.*
If an Executor or Administrator for a good consideration promise
to pay the debt of his testator or intestate he is liable *de bonis
propriis.*—*Com. Cont.* 511.—The assignment of a chose in ac-
tion is a good consideration for a promise.—*Sw. Dig.* 438.—14

Bennington, Feb. 1826.

Moar vs. Wright.

*Mass. Rep.* 108.—19 *Mass. Rep.* 281. *Assumpsit* lies against an Executor upon a promise in consideration of assets.—1 *Com. Dig.* 346, *Tit. Adm.*—*Cowp.* 284, *Atkins et uxor* vs. *Hill.*—289, *Hawks et uxor* vs. *Saunders.*—And such promise charges him *de bonis propriis.*—*Cro. Eliz.* 91, *Trewinian* vs. *Howell.*—The equity of the plaintiffs' claim is a good consideration.—7 *Johns.* 99 and *note.*—2 *Saun.* 137; *note d.*—1 *Ves.* 125.—*Assets* in this case are admitted by the defendant's plea, and he holds the assets in trust to pay the debts due from the estate. He is under a legal and a moral obligation to apply the assets, and the plaintiff had a legal and equitable claim on the defendant for so much as will satisfy his claim. So if a promise be to the benefit of the promisor; or to the trouble or prejudice of the promisee, it is founded on a good consideration. 1 *Com. Dig.* 195. (*B.* 1.) The plaintiff's right and interest vested on the making the promise.—*Sw. Dig. Tit. assumpsit.*—5 *Com. Dig.* (*C* 57.) *Tit. Pleader*—7 *Co.* 10.—1 *Chit. Pl.* 309.

The averment of the breach of the contract—that a reasonable time had elapsed in which the defendant could have sold the property belonging to said estate; is according to the nature of the stipulation, and in the words of the contract; and co-extensive with the import and effect of the stipulation in the contract. And if words are capable of different meanings; that shall be taken which will support the declaration or agreement; and not that which defeats it.—1 *Chit.* 242.—1 *Salk.* 325, *Nyat* vs. *Allumes.* Where a contract is specific to do or forbear some particular act, it is in general sufficient to assign the breach in the words of the contract.—1 *Chit. Pl.* 226.—3 *Com. Dig.* 349. So if it contain the sense and substance; though not in the precise words of the contract; it is sufficient. An averment in this case that the defendant had sold the property would be unnecessary. The words "when he should sell,"&c. were used by the defendant to express or qualify his ability to pay within a reasonable time, and not for the purpose of limiting the *time* of *payment* on that act. Any other construction would be inconsistent, repugnant and absurd. It is a rule that the construction of a contract shall be most strong against the obligor and in favor of the obligee ; a reasonable time then would be considered the time in which the defendant was to perform his contract.

If the averment of the time of payment { Bennington, Feb. 1826.
can be supposed to be defective, the defect } Moar vs. Wright.
is a formal and not a substantial defect; therefore aided on this
demurer.—1 *Chit. Pl.* 647. By pleading over many defects in
form are aided.—*Id.* 402.—5 *Com. Dig.* 376, 421. The plain-
tiff has substantially set forth his title, and a good title defectively
set forth is sufficient on demurrer.

The defendant's plea is substantially bad, it is not comformable
to the declaration, and does not answer the material facts alleged.
1 *Sw. Dig.* 617. A plea ought to answer all it assumes to
answer and no more.—1 *Chit. Pl.* 507. This plea goes only to
the inducement, and does not answer the material facts alleged in
the declaration. A plea which is substantially and altogether bad
will not be aided by the replication nor cured by verdict.—1 *Chit.
Pl.* 547.—An issue must be upon a material point. *Id.* 632.—5
*Com. Dig.* 495. A verdict does not help an immaterial issue.
—*Ib.*

*Hall* and *Isham*, for the defendant in error. The defendant's
plea is good.—1 *Chit. Pl.* 474.—1 *Selw. N. P.* 43, 44.—2
*Saund.* 126, *Bandun* vs. *Fox.*

The replication is bad; because it is a departure from the dec-
laration; and it shows the assignment of only *part* of the debt.—
1 *Chit.* 618, 622—*Ham. on Par.* 103.—6 *Cranch*, 324, *Tyler*
vs. *Tuel.*—7 *Lim.* 206.—5 *Bac.* 242.

The declaration is insufficient. There is not a sufficient con-
sideration stated to enable the assignee to maintain the action in
his own name, admitting that *Isaac C. Brownell's* claim had been
a judgment against the defendant in his *own* right.—1 *East.* 104,
1. *Selw. N. P.* 39. There must be a *new* consideration, the assign-
ment not being sufficient.—1 *Chit. Pl.* 10,95.—*Ham. on Par.* 98,
102.—1 *Saund.* 210.—*Forth* vs. *Stanton.* The cases to con-
tradict this position are distinguishable from this, and may be clas-
sed as follows : 1 Actions for money had and received. 2 The
case of a *foreign* bond. 3. Mercantile transactions, as bills, notes,
policies of insurance, bills of lading, respondentia bonds, and per-
haps other species of contracts negociable at their inception.

Admitting that the assignee might maintain the action there is no
sufficient consideration to charge the defendant in his *own* right.

Bennington Feb, 1826. } The having of *assets* is not any considera-
*Moar* vs. *Wright.* } tion.  7 *Term R.* 350.—1 *Com. Con.* 10,
513, 515.—1 *Saund.* 210, *Forth* vs. *Stanton.*—*Lawes on Pl.*
58.—3 *Bac.* 90.—*Rob. on Fr.* 205.—7 *Term R.* 348, *Mitch-
ison* vs. *Hewson.*—*Sw. Dig.* 247-8, 204.  The case of *Hawks*
vs. *Saunders* is not law.  The doctrine there decided that a lega-
cy may be recovered at common law, has since been frequently
over-ruled.—5 *Term* 690, *Deekes* vs. *Strut.*—*Peake's N. P.* 73,
3 *Chit.* 121 *n.*—*Toller* 464-5.  The doctrine that a mere moral
obligation is a sufficient consideration to support an assumpsit *is
denied* to be law.  The true rule is that an express promise can
only *revive* a precedent good consideration, which could have been
enforced at law, thro' the medium of an implied promise, but can-
not *create* an original liability.—3 *Bos. & Pul.* 249 *n.*—1 *Bac.*
270.—1 *Com. Con.* 24, *n.* 4—13 *Johns. R.* 257, *Smith* vs. *Ware.*
Even a legal obligation is not sufficient to charge a man in *another
right.*

The suit should have been brought against the defendant in his
representative character.  A reference to the practice in England
in suits against Executors and Administrators will explain the
seeming confusion of the authorities upon this point.—7 *T. R.
Rann* vs. *Hughes.*—*Cro. Eliz.* 91, *Trewinian* vs. *Howell.*—5
*Term R.n.a.*—1 *Saund.* 210 *n.* 1—*Toller,* 414—*Tidd's Prac.
Forms,* 178, 187.

Upon principle this suit ought not to be sustained.

The declaration is insufficient, because the *sufficiency of assets*
is not shown—the *funeral charges and expense of administration*
may cause a deficiency.

By the declaration, the *sale of the property* belonging to the
estate is a condition precedent to the defendant's liability,
and not being averred to have happened—the declaration is bad
on a general demurrer.—1 *Chit.* 308.—*Id.* 317.—5 *T. R.* 8.
(note A.)

Royce, J. delivered the opinion of the court.  As the action
was brought upon the defendant's promise, and not upon the al-
lowance of the commissioners, the plea related to matter of in-
ducement and not to the gist of the declaration.  If then the sup-
posed repugnancy or variance in the statement of the probate re-

cord would not have availed the defendant in evidence under the general issue, the replication was a sufficient answer to the plea.

The record, described in the replication, did show an allowance to *Isaac C. Brownell*, of the $59,07, on book account, and was therefore, for all the purposes of the action brought, consistent with the statement of the allowance in the declaration. The existence of a legal claim to that amount, was in this instance the only necessary and material subject of averment; though in an action directly upon the allowance of commissioners, a further or different description of the record might be necessary. The plea and replication may therefore be laid out of the case, and the questions to be decided, are those which would arise upon a general demurrer to the declaration.

The most important objection raised, is to the alleged consideration of the defendant's promise. This was avered to consist in the assignment of the debt by *Isaac C. Brownell*, to the plaintiff, for a valuable consideration, with an order of payment to the latter, notice thereof to the defendant; and assets in his hands. And it is contended that these facts, either separately or in combination, did not make to the defendant a valid consideration for the promise declared on. With respect to the assignment of a debt for a valuable consideration, with notice to the debtor, as alone a consideration for his promise to pay the debt to the assignee, there is certainly some contradiction in the authorities referred to. In *Connecticut* and *Massachusetts*, it appears to be well settled that such consideration is good—1 *Sw. Dig.* 438.—10 *Mass.* 319, *Crocker* vs. *Whitney.*—12 *Mass.* 283, *Mowray* vs. *Todd.*—13 *Mass.* 292, *Usher* vs. *D'Wolfe.*—15 *Mass.* 387, *Coolidge* vs. *Ruggles*; while in some of the recent English authorities it seems to be considered that a new and additional consideration, as forbearance or something equivalent, should induce the promise of the debtor to the assignee.—*Ham. Par.* 100.—1 *Chit. Pl.* 10, 95.—This court is inclined to adopt the former doctrine, which is thus stated by JACKSON, Judge, in the case first above cited—" The general principle has been long well settled that such assignment with notice to the defendant, imposes on him an equitable and moral obligation to pay the money to the assignee : and although

Bennington, Feb. 1826.  
*Moar* vs. *Wright*.

such an obligation is not sufficient to sup-port an implied *assumpsit*, so as to enable the assignor to maintain an action in his own name, yet it is a good consideration for an express promise to that effect." As to the position urged by the defendant's counsel, that moral obliga-tion is not a sufficient consideration for an express promise,[*] we think, without intending to question its general correctness, that it has little if any bearing upon the present case. The cases to which that doctrine has hitherto been confined, are those in which no previous legal obligation to pay the debt or perform the duty in question, had ever rested on the party promising; but in cases like the present, there is already a legal obligation to pay the debt, and the moral duty only affects the question, to whom the antecedent legal duty shall be performed. Unless it is assumed that payment to the assignee, instead of the original creditor, is an inconvenience to the debtor, (and certainly no such general proposition can be advanced,) a distinct consideration for that purpose seems to be needless. There is little reason to doubt of this conclusion, when it is considered that the obligation of the debtor to the assignee is more than a mere moral duty; it is at least an obligation binding in equity, and one which even the courts of law will not permit the debtor to evade.—1 *B. & P.* 447, *Legh* vs. *Legh.*—*Ham. Par.* 100.—8 *Mass.* 465, *Roylston* vs. *Green.*—13 *Mass.* 304, *Jones* vs. *Witters.* Another reason in support of the promise in this case, may arise from the nature of the property or fund in respect of which it was made. The diffi-culty raised by the authorities opposed to the foregoing opinion, consists in a supposed distinction between a mere personal debt and a specific deposit or appropriation; it being universally a-greed that in the latter case, an assignment with notice to the de-positary, followed by his assent and promise to the assignee, works an effectual transfer of the right. It is held that by these means the money has changed owners, and the depositary has become B's agent as he was C's before.—*Ham. Par.* 100.—1 *Sw. Dig.* 438.—1 *H. Bl.* 239.—4 *Esp. N. P. C.* 204. Now it is thought that some analogy of the present case to the one stated may be

[*] See this subject very ably and elegantly discussed, by *Parker*, *Ch. J.* in *Mills* vs. *Wyman*, 3 *Pick.* 207.

perceived; for the subject of this promise
was not a personal debt of the defendant but
a specific charge upon the estate in his hands to be administered.

The counsel for the defendant have made a further point in this case which merits particular attention. It is insisted that though the promise stated in the declaration may enable the plaintiff to bring an action, yet the defendant can be sued thereon only as executor; for that no sufficient consideration is disclosed to charge him in his own right. The following proposition has been extracted from decided cases, and is laid down in several books as a settled rule ; " that if the action is brought against the executor in that character, to recover a demand out of the testator's estate, any special promise to pay the testator's debt is a mere *nudum pactum,* if there are no assets, and if there are any, the extent of the promise is measured by the extent of the assets, or in other words, the promise superinduces no obligation upon the original representative liability." *Rob. on Wills* 135-6.—*Rob. on Fr.* 205.-1 *Sw. Dig.* 346-7-8. This rule, however just, does not in terms extend to a case where an executor is sued in his private right, upon his special promise to pay a debt, having ample assets applicable to that object. But a further principle is advanced, that a liability or indebtedness in one right is not a consideration for a promise to pay in another right.—7 *T. R.* 348, *Mitchinson* vs. *Hewson* and *Rann* vs. *Hughes* there cited. It is not improper to consider the doctrine advanced in these cases, with some reference to the facts presented. In the former, a husband was sued upon his promise, without any new consideration to pay the debt of his wife *dum sola,* when the effect of the promise, if sustained, was to convert a conditional liability into one which was absolute ; and in the latter, an administratrix indebted in that right, in consideration of that indebtedness, had promised, in the same capacity, to pay the debt when requested. There was an averment in the declaration, that the intestate died possessed of effects sufficient to pay the debt, but no averment that any assets had come to the hands of the defendant to be administered. The defendant pleaded, 1. *non assumpsit,* 2. *plene administravit,* and 3. *plene administravit* except as to certain goods, which were not sufficient to pay an outstanding bond debt. The first issue being found for the plaintiff, and the two last in favor of the defendant, a judgment on the first was entered up in the Kings' Bench a-

Bennington, Feb. 1827. } gainst the defendant *de bonis propriis*. This

*Moar* vs. *Wright.* } judgment was reversed in the Exchequer-chamber, and the judgment of reversal was affirmed in the House of Lords. The judgment of the King's bench does not appear to have gone upon the ground that the defendant had assets, or that there was an adequate or legal consideration for her promise as a personal undertaking, for the record negatived both these suppositions, but on the ground, that by pleading a matter within her own knowledge which the jury had found to be false, she had subjected herself to a judgment in that form.—*Cro. Jac.* 671—2 *Rob. on Wills*, 125-6. The reversal therefore was nothing more, in effect, than the correction of an error in the form of entering up judgment against an administratrix sued in that character. With these observations upon the two cases above mentioned, their authority would seem to be limited to this proposition;—that where the liability in one right is to be enlarged, or rendered more fixed and certain, in another right, a new consideration is necessary to sustain the new obligation. The case of an executor sued in his private right, on a personal promise to pay a demand, for which as executor he was both indebted and *compellable to pay*, by reason of sufficient assets in his hands, does not seem to have occured before, except in the instance of legacies. For these it was once held that he was personally liable, if he had expressly promised in consideration of assets.—2 *Cowp.* 284, *Atkins* vs. *Hill.*—*id.* 289, *Hawkes* vs. *Saunders.*—1 *T. R.* 716. These cases were afterwards overruled, because the subject of legacies was considered to be exclusively of equitable jurisdiction, but not for any objection in point of law to the form of the action, or to the consideration of the executor's promise.—5 *T. R. Deeks* vs. *Strut.* But it is further urged as a general principle of law, that every promise must be co-extensive with its consideration; and hence it is infered, that if the whole consideration concerns the defendant in his capacity of executor, his promise can affect him only in that character. 3 *T. R. Nerot* vs. *Wallace*, and the two cases in 7 *T. R.* above cited. The reason of this maxim is readily discovered in every case, where a departure from it would operate to create or fix a duty, without a corresponding advantage or equivalent; but when neither the extent nor certainty of the obligation is alter-

ed, but only the character or right in which ⎧ Bennington; Feb. 1827.
it is to be discharged, the rule is one of form ⎰ _Moar_ vs. _Wright._
only.   In this case it appears, as well by a distinct averment in
the declaration to that effect, as by the language in which the de-
fendant's promise was expressed, that he had assets applicable
to the payment of this particular debt, and sufficient for that pur-
pose.   As executor then he was not merely _indebted_, but was also
_compellable to pay_, in a due course of administration.   We also
think that the assignment of the debt to the plaintiff for a valuable
consideration, and the equitable obligation to him which was there-
by imposed upon the defendant, are to be noticed as ingredients
in the consideration for the promise which was made.   Had the
defendant chosen to promise as executor, there is no occasion to
dispute that he might have been declared against in that character;
but as he professed to act in his private right, there seems to be no
solid objection against allowing to the act all that legal effect which
was intended by the parties.   It is proper however to notice one
case which is relied on as being directly opposed to this decision.
1 _Saund._ 210, _Forth_ vs. _Stanton._   That case was argued upon
two grounds,   1. That the assignment of the debt by _Neve_ and
_Alsop_ to the plaintiff was but a power of attorney to receive pay-
ment, and did not give to the plaintiff any interest in the debt, of
which the court could take notice ; and 2d, that there was no con-
sideration for a promise which should charge the administratrix
personally.   The reasons of the court are not given, but judg-
ment was rendered for the defendant.   Now the first ground
there taken would not at this day be sustained ; for the courts can
and will take notice, that an assignee for a valuable consideration
is the equitable owner of the debt, and the legal owner also for
every purpose, but that of suing upon the original contract or cause
of action. It is true that upon the other point, that case is generally
cited as authority, and has a strong resemblance to the present.
There is one material point however in which the resemblance
fails.   It is there alleged that the debt was £100 and that the
defendant had received assets to the value of £100, but it is not
alleged, that at the time of making the promise to the plaintiff, she
had assets legally applicable to that demand.   Therefore for any
thing which appears, the promise, if enforced, might have subject-

ed her to a personal loss.   And as the action was one in which *plene administravit* could not be pleaded, there was no admission of assets by omitting that defence.   That case is therefore not decisive of the present.   A difficulty has been started, by supposing that before the execution of this promise the defendant had died, or been removed from the office of executor.   To this the following answer would seem sufficient:—if upon accepting the personal undertaking of the executor, the creditor discharged the estate, the promise would remain in force, and the estate would be holden to refund the sum paid upon it; and if no such discharge was given, the promise might become invalid, when the fund which made its principal consideration was taken out of the promisor's hands.   We have therefore come to the conclusion, that the defendant's promise, as set forth in this record, was founded on an adequate legal consideration, that it was a personal promise, and that he was properly impleaded thereon in his individual capacity.

It is further objected that the sale of property by the defendant was a condition precedent, and should have been avered in the declaration.   The promise was to pay "in a reasonable time, when he should sell property belonging to the estate."   If these expressions admit of any other construction than the one now contended for, it is the duty of the court to reject this; since it is nothing less than saying, that the defendant by a voluntary, and perhaps wrongful, neglect to convert the estate into money, has it in his power to frustrate his agreement.   We take the evident meaning to be, that the defendant was to pay in a reasonable time to raise money for that purpose by the sale of property, or which is the same thing, that within a reasonable time, he would raise money by sale of property and pay the debt.   The result is that the judgment of the county court must be reversed.

*Hall*, for the defendant, now moved for liberty to withdraw the demurrer and plead the general issue, which was granted on terms.

Skinner, Ch J. not being present at the argument took no part in this decision.

*Church* and *D. Robinson*, for the plaintiff in error.

*Hall* and *Isham*, for the defendant in error.